All right, our fifth case for this morning is Hammerslough v. Berryhill. Mr. Schiff. May it please the Court. Jim Schiff on behalf of the plaintiff, Joseph Hammerslough. This is a Social Security disability case in which the administrative law judge made several errors. We are asking this Court to reverse on two main issues. First, the ALJ erred in evaluating Mr. Hammerslough's residual functional capacity. And second, the ALJ erred in evaluating Mr. Hammerslough's subjective allegations. Mr. Hammerslough suffers from several impairments, including a brain tumor, headaches, atrial fibrillation, obstructive sleep apnea, superficial venous thrombosis, and obesity, with BMI's well over 40. His most significant health issue is his headaches, which he experiences both during the day and at night. The headaches consist of a throbbing, severe pain with sensitivity to light and occasional dizziness. To treat his headaches, Mr. Hammerslough takes Percocet and lies down for extended periods. One of his treating neurologists, Dr. Riskin, opined that the headaches could result from the brain tumor, obstructive sleep apnea, or tension. The ALJ in this case made a factual error in concluding that Mr. Hammerslough only sporadically complained of headaches to his treating neurologist. The evidence shows that Mr. Hammerslough complained of headaches to five out of six treating neurologists, specifically Drs. Eisenberg, Wang, Helfrich, Hsu, and Riskin. The ALJ's failure to recognize the consistency of Mr. Hammerslough's headaches and those complaints to his neurologist was not harmless. In Allard v. Barnhart, this court held that an ALJ's mistake of fact is harmless only when a contrary determination would be incredible on its face or the ALJ specifically states in his decision that he would have made the same determination with a proper understanding of the facts. So let me ask you a question. The ALJ finds, as part of this residual functional capacity determination, that sedentary work is within reach for Mr. Hammerslough, but I thought that you were arguing that he had problems with sitting in the nature of blood clots, venous thrombosis, etc. How much is there in the record to indicate that he can't sit through the day? Well, quite a bit, Your Honor. He testified that he spent the majority of the day in a recliner, like a Lazy Boy recliner, or in bed. After the endovenous laser ablation treatment, the physician recommended that he continue to wear compression stockings, and he had the laser treatment after six weeks of elevating his leg and wearing those stockings, and the swelling had not gone down at that point. The other evidence, Your Honor, is the fact that... So is the evidence that he always has to keep his legs up, or... I mean, I would think that's not what we're usually thinking about with the sedentary job, that you're in a Lazy Boy with your legs above your head. Right. So Mr. Hammerslough did not indicate that he continuously has to elevate his legs, but if he was not in a recliner, he would usually be in bed lying down. And the issue with not being able to perform sedentary work is that if one is in a recliner and elevating his legs, that he could not reach the workstation and perform any of those fine maneuvers of the work that he requires. So we're contending that if the ALJ had understood that the complaints of headaches were consistent, and that Mr. Hammerslough had complaint of headaches to the appropriate specialist, he may have found that these headaches were independently disabling or disabling in combination with his other impairments. Now, Percocet's an opioid, right? Yes, Your Honor, it is. So he's taking Percocet for these headaches. That's right, Your Honor. The ALJ in this case found that Mr. Hammerslough had an inoperable brain tumor, which would be expected to cause a certain amount of limitations, that he had significant limitations and significant symptoms. And then at the end of the decision, the judge wrote that he should be afforded the substantial benefit of the doubt when considering his work-related limitations. So we're contending that there's an inconsistency between the statements in the ALJ's decision appearing to credit those headaches and then not assessing any particular headache-related limitations in the RFC residual functional capacity assessment. So, but it sounded like from the beginning of your argument that you really are primarily relying on these headaches, or is that wrong? Well, Your Honor, not just the headaches in this case. We are relying on the combination of impairments. And this is a significant combination in our view, because the judge recognized that Mr. Hammerslough is obese, and this court has held in the Villano v. Astru case that obesity can certainly cause limitations in sitting, which is also consistent with what Mr. Hammerslough says about his ability to get through the day. So when considering the combination of impairments, the judge did not explain what evidence showed that Mr. Hammerslough was untruthful about what he was doing at home, and the judge failed to substantiate the finding that he could sit for six hours a day with his legs in a dependent position as opposed to being up on a recliner, or why those impairments would not require him to lie down as he testified to. And one of the other contentions that Mr. Hammerslough has is that a limitation to sedentary work should not be considered default work. Sedentary work is still a full-time job. It involves getting to and from the workplace. It involves sitting for six hours, up to six hours, an eight-hour day, standing and walking for two hours a day. Mr. Hammerslough does allege, and there is evidence, that he was falling even at home, that he relied on a segue to... This is something that's an assistive device, whether it's a recreational device that shows that he's got better capability than he asserts. That's right, Your Honor. And one of the concerns that we had about the ALJ's treatment of the segue is that the ALJ assumed that one who was using, an individual who was using a segue, would not have disabling balance issues. But the Federal Transit Administration recognizes that individuals with disabilities may use a segue as a personal mobility aid in lieu of more traditional devices like a wheelchair or a scooter. And the evidence also reflects that Mr. Hammerslough had multiple emergency room visits for falling off of the segue. And so even with the use of the segue, he's not able to successfully get around town. The judge made several mistakes in analyzing the consistency of Mr. Hammerslough's allegations with the record. The judge included the not entirely credible boilerplate language that this court has criticized in several cases, including Parker, Spiva, Martinez, and most recently in the Aiken case. And we also contend that the judge made several mistakes in failing to analyze Mr. Hammerslough's activities of daily living, which were quite limited in this case. He lived in a house with his mother, who was elderly. His mother did his laundry because Mr. Hammerslough could not go up and down the basement steps. He rarely cooked and shopped. He did not drive. And he spent the majority of the day in a recliner or in bed. I will save the rest of my time for rebuttal. Thank you. All right. Thank you. Mr. Levitt. May it please the court. David Levitt on behalf of the commission. Having impairments is not the same as being disabled by them. The ALJ considered Mr. Hammerslough's impairments, reasonably found that they were significantly limiting, but found that Mr. Hammerslough did not show evidence that they were actually disabled. What I'm worried about is the ALJ seems to think that sitting is automatically easy to do, automatically not something that could give rise to medical problems. But if you've got a history, I mean, sitting, of course, as you know, probably from airplanes and everything else, can lead to the formation of blood clots in one's legs. And apparently he's had some sitting automatically. Okay. Well, any work is automatically okay, unless the claimant proves or shows that it is not okay. Right. And he has shown evidence of the superficial venous thrombosis. He's shown evidence that he needs to be, you know, at home with his legs up all the time. His mother says he can't sit for more than 45 minutes. There's quite a bit of evidence in the record to suggest that continuously sitting through the day is not something that this particular man can do. And if you have to sit for the job, then that's, for the ALJ, the link between the particular physical problem and the ability to function in the workforce. Well, looking at the medical evidence, Mr. Hammerslough had successful surgery for his superficial vein thrombosis. And four months after that surgery, he said that everything was all right with that condition, except that he had pain, but only when he did not take his medication. But pain isn't the same as a risk of clots. You might be pain-free and still get a blood clot. But if he takes the Levinox injections, wasn't there also evidence in the record that he was taking Levinox injections as blood thinners which would guard against clots? Yes, Your Honor. Yes, Your Honor. And there wasn't a recommendation of him not sitting after that surgery. There was not a recommendation. There was not a recommendation of that. He said everything was all right and the physicians described that surgery as successful. So similar to the atrial, to the superficial vein thrombosis was Mr. Hammerslough's atrial fibrillation. But to go back to the sitting for one last point, he even had to ask the ALJ to stand up during his hearing. Sometimes the commissioner holds against somebody the fact that they can make it through the hearing. They say, well, obviously if you can make it through the hearing, you can make it through work. But he is not one of those people. He needs to stand up during the hearing because of his discomfort. Well, the ALJ noted that he needed to stand up, or that he said he needed to stand up and mentioned that, and that was part of the ALJ's consideration. The ALJ did not hold against Mr. Hammerslough that he sat for 45 minutes and... Well, he admits that he can sit for 45 minutes, but we don't have evidence from the vocational expert that sitting for 45 minutes and then doing something else is the kind of job that they were talking about. You're right. We do not have evidence of that because the ALJ did not find that that restriction was warranted. Right. But similar to the superficial vein thrombosis, one of the other impairments that Mr. Hammerslough says is disabling is atrial fibrillation. But like superficial vein thrombosis, treatment of that condition was successful. And numerous times after Mr. Hammerslough began taking his medication, he did not have any incidence of atrial fibrillation, and he noted that he had not had incidence for quite some time. Likewise, Mr. Hammerslough had sleep apnea in claims that is disabling. However, testing showed that the CPAP machine under a certain setting went and created good sleep, and that when Mr. Hammerslough took or used the CPAP machine, he did not have sleep apnea symptoms. Another impairment that is at issue here is ptosis. That was something that Mr. Hammerslough had since he was a child. He worked, as the ALJ noted, he worked numerous years with that impairment. Yeah, I think we're really, we're focusing on the headaches, we're focusing on, I mean actually atrial fibrillation will also lead to blood clots in the heart. We're looking at whether taking all of these things as a whole, he can actually make it through a work week of sedentary work. Well, right. Well, as I mentioned, the atrial fibrillation, superficial vein thrombosis, and sleep apnea are controlled. So, the ALJ was reasonable to find that Mr. Hammerslough could perform at least a restricted range of sedentary work for that. Likewise, the ALJ looked- Have you ever heard of anybody in today's world being a telephone clerk? Well- I mean, I haven't actually, to be honest. I don't think there is such a job anymore, even though the DOT back in 1992 might have thought that there was. Well, you have people who sit and talk on the phone to people. I mean- Is that the definition of telephone clerk under number 237.367-046? So, it's someone who gives quotations over the phone for certain information. Order clerk. These really seem dated to me. Well, the titles may seem dated, but the vocational expert testified that these were still occupations. An order clerk is someone involved in charge accounts and looking up things for credit. So, that would seem to be reasonable. But, turning back to the evidence, Mr. Hammerslough alleged that as part of his headaches, that he had balancing issues and that he couldn't- Well, he has a lot of evidence of falling down, which would suggest a balancing problem. Right. Well, he's testified that he fell down and- Well, he went to seek medical care for it. Right. So, there were two incidents where he fell down off his Segway. One was right before the relevant period where he dodged an oncoming vehicle and then fell down. And another incident was when he said he hit a crack in the sidewalk and fell down. But, in other times, Mr. Hammerslough has been able to use the Segway successfully. And it implies at least some balancing abilities to get on the Segway and move around. He's certainly not someone who can barely walk, even around the house, as he- Why is that? I mean, getting up and down off the Segway doesn't say much about walking. It says that you're not walking. Right. But he's able to balance himself sufficiently to at least get on the Segway and to go around the Segway. Even if his balancing isn't perfect, the LJ restricted Mr. Hammerslough to only occasional balancing, occasional going upstairs, and sedentary work, which would entail only occasional walking. And while Mr. Hammerslough alleged many balancing issues, on numerous exams, those were not apparent. Exams often documented normal gait. He was shown to have generally well-preserved sensation. He was able to turn easily. He was able to do a tandem stance without difficulty. So it's not, even though he's complaining about these issues, it's not really documented on exam. And with the tumor that Mr. Hammerslough had, the LJ noted on page 25 of the record, that this was just discovered incidentally. This was even before Mr. Hammerslough alleged that he had disabling limitations. But why does that matter? As I recall, it was kind of an accident that Justice Ginsburg's pancreatic cancer was discovered. It didn't mean she didn't have it. It just meant it was, oddly enough, discovered early enough to do something about it. So I don't understand why the accident of discovery bears on whether it's a significant condition or not. Well, physicians weren't looking for it. Yeah, that's what I'm, my response would be, so what? I mean, they found it. Right, but that the symptoms weren't there to justify looking for it in the first place. I think that's what the LJ was getting at. But it was unchanged in further imaging, which is something the LJ noted multiple times. And while Mr. Hammerslough has alleged headaches, the LJ noted that it was sporadic, and that there were periods of time where he did not allege headaches, and there were periods of time where there were some exacerbations, like in 2014, 2015. But even at that time, he was able to achieve control through medication. Now, does the vocational expert ever wonder whether somebody who's taking opioids is going to do a good job in these occupations that are identified? Opioids tend to make you sleepy. Right, there was an indication here that there were significant side effects. And Mr. Hammerslough did not allege... What's a significant, so would an ordinary side effect like sleepiness be significant in your view, or would that be insignificant? Significant, well, if it was significant sleepiness that would cause him to be unable to do the job, that would be a side effect that could potentially have an effect on work. I see that my time has almost concluded. All right, that's fine. Just to finish up, again, that Mr. Hammerslough had a number of impairments is not evidence that he was disabled, that he had to take medication or get treatment for those impairments was also not by itself evidence that he was disabled. The LJ reasonably read the evidence and concluded that Mr. Hammerslough did not show disabling limitations. Therefore, the commission requests that the court not reweigh the evidence and instead affirm the district court's decision. Okay, very good. Anything further, Mr. Schiff? Just a couple of quick points. Mr. Hammerslough did allege that his atrial fibrillation medication, propafinone, did cause drowsiness, and so he did allege side effects. Also regarding Mr. Hammerslough's sitting limitations, Dr. Youse in October of 2014, which is after the laser treatment, advised him to continue elevating his legs, which would indicate that Dr. Youse felt that Mr. Hammerslough was still at risk for blood clots. And regarding the headaches, ALJ specifically found that the headache complaints were sporadic to the neurologist, and I think we established at the beginning of my argument that they were not. Thank you, Your Honors. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.